ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/7/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES GYPSUM COMPANY,

                              Plaintiff,

     v.

ECTEK INTERNATIONAL, INC. and ECTEK
BUILDING MATERIALS, INC.,

                         Defendants.

_____

ECTEK INTERNATIONAL, INC. and ECTEK
BUILDING MATERIALS, INC.,

                    Counter-Plaintiffs,

     v.

UNITED STATES GYPSUM COMPANY,

                    Counter-Defendant.

23 Civ. 3459 (LLS)

OPINION & ORDER

    Plaintiff United States Gypsum Company ("USG") moves to
compel defendant Ectek Building Materials, Inc. ("EBM") to
produce its product, Megaboard, for testing. Dkt. No. 78. For
the reasons stated below, USG's motion is granted subject to the
limitations herein.

## Background

    USG brings Lanham Act and related state claims against its
competitor, EBM. Dkt. No. 15. USG alleges that EBM's magnesium
oxide board, sold commercially as "Megaboard," does not meet the
International Building Code ("IBC") noncombustibility standards

- 1 -

for materials used in certain types of residential and commercial construction, and therefore that EBM's claims to the contrary are false and misleading. Id. Central to this discovery dispute, USG argues that Megaboard's "noncombustible" certification is based on an incorrect interpretation of the IBC's ASTM E136 testing standards and that Megaboard cannot pass a properly conducted ASTM E136 test. Id. at 2, 11-12. EBM counters that USG has proffered no evidence that the ASTM E136 Option B test certifying Megaboard "noncombustible" is unreliable, which should be the only issue at trial. Dkt. No. 82 at 1-2, 7-9.

USG's Supplemental Request for Production requests "a Full Skid (Pallet) of MEGABOARD that is located within the United States" so that USG may conduct its own ASTM E136 testing. Dkt. No. 77-1. EBM objected to the request on the basis that it was "overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of evidence admissible at trial" and did not "specify a reasonable time, place and manner"—including a protocol—for the testing. Dkt. No. 77-2 at 2-3. EBM further objected that the testing company USG specified, Southwest Research Institute, "does not have the requisite equipment or accreditation to perform ASTM E136 testing of MEGABOARD that is relevant to this litigation." Id.

## Legal Standard

Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "Although not unlimited, relevance, for the purposes of discovery, is an extremely broad concept. Where relevance is in doubt, the district court should be permissive." Popovchak v. UnitedHealth Grp. Inc., 2025 WL 1312879, at *2 (S.D.N.Y. May 6, 2025)(internal quotations and citations omitted). Nevertheless, relevant discovery must be limited where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## Discussion

Both parties agree that whether Megaboard can pass an ASTM E136 test is of central importance to this case. See Dkt. No. 63 at 3 (listing "whether Megaboard can pass an ASTM E136 test" as the first "Disputed Material Factual Issues Which the Parties Agree Are Important to this Litigation"). USG argues that its request for the physical production of Megaboard in order to conduct its own ASTM E136 test is therefore "extremely relevant" as "the critical issue in this case." Dkt. No. 78 at 4-6. EBM disputes the relevance of this request on the basis that USG

need only prove EBM's proffered test results unreliable to win its case. Dkt. No. 82 at 6-7.

While EBM's arguments about the standards in a Lanham Act case might prevail at trial, they are not a sufficient basis to limit discovery. See Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 64 (2d Cir. 1992)(affirming that the Second Circuit's Proctor reliability standard "merely establishes plaintiff's burden of proof with respect to defendant's tests. It in no way limits the evidence which plaintiff may use in meeting this burden."). Relevance under Rule 26 does not guarantee evidence of USG's tests would be admissible at trial, nor does it require the Court to opine on the burdens each party would face on the merits—these questions are properly reserved for a later stage of litigation. It is sufficient for Rule 26's low relevance threshold that USG may support its case with its own testing. See Euro-Pro Operating LLC v. Euroflex Americas, 2008 WL 5137060, at *7 (S.D.N.Y. Dec. 8, 2008)(holding that "plaintiff may adduce its own evidence of falsity" of defendant's establishment claims via independent testing).

Having met the low threshold for relevance, the requested production is neither disproportionate to the needs of the case nor unduly burdensome to EBM. USG has offered to pay market rate for the required production, and EBM frequently provides

Megaboard to customers in the United States, meaning that EBM's burden and expense in producing Megaboard will be no greater than an ordinary business transaction.

EBM argues that USG's Supplemental Request should be denied—or at least postponed—because USG "has failed to use other, less costly and burdensome means to meet its burden of proof" to demonstrate that EBM's ASTM E136 test results are unreliable. Dkt. No. 82 at 5. But Rule 26 does not require that USG's discovery hew narrowly to defendant's view of the burdens of proof, or that USG pursue only the least burdensome types of evidence. Even in light of the disputed utility of USG's Supplemental Request, EBM has not presented sufficient evidence of the type of disproportionate burden the Rule is designed to avoid, and USG's request cannot be denied on that basis.

However, conscious of EBM's objections, the required production shall be reasonably limited as follows. First, USG shall bear the cost of the Megaboard produced by purchasing it at the market rate, inclusive of all typical shipping and handling costs. Second, since USG has not demonstrated a need for a full pallet of Megaboard, the parties shall agree to a reasonable amount necessary to conduct the tests required.

Finally, the parties shall agree to a reasonable time, place, and manner for delivery of the Megaboard to overcome

EBM's objections. However, the Court declines to require USG to select a testing facility other than Southwest Research Institute. The parties are entitled to pick their own experts, and the validity and reliability of the testing and opinions of each party's respective experts is a factual issue properly reserved for trial. For the same reason, and those discussed above, the Court will not require ESG to specify a testing protocol or otherwise limit the type of ASTM E136 testing USG may conduct. EBM should reserve its arguments about USG's test choice and protocol for litigation on the merits.

### CONCLUSION

. For the foregoing reasons, and subject to the above limitations, plaintiff's motion to compel discovery is granted.

So ordered.

Dated:  New York, New York
        October 7, 2025

Louis L. Stanton
LOUIS L. STANTON
U.S.D.J.

- 6 -